IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 04-cr-00224-REB
Civil Action No. 06-cv-01975-REB-MJW

UNITED STATES OF AMERICA,

    Plaintiff,

v.

NATHAN ERIC SCANLON,

    Movant.

---

**RECOMMENDATION ON
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO
28 U.S.C. § 2255 (Docket No. 53)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

Before the court is the *pro se* incarcerated Movant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Docket No. 53), including an Declaration in support (Docket No. 53 at 9-16), which was referred to the undersigned for a report and recommendation pursuant to a Special Order of Reference to United States Magistrate Judge issued by Judge Robert E. Blackburn on September 4, 2008. (Docket No. 64).  The Government filed a timely response, which included an affidavit from Movant's trial counsel, Scott Varholak.  (Docket No. 63).  The court has considered the motion, Movant's Declaration and exhibits, the response thereto, applicable Federal Rules of Civil and Criminal Procedure, and case law and has taken judicial notice of the court's file.  The court now being fully informed makes the following findings,

conclusions of law, and recommendation that the motion be denied.

The court must construe the § 2255 motion liberally because the Movant is not represented by an attorney. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). The court, however, should not be an advocate for a *pro se* litigant. See Hall, 935 F.2d at 1110.

Movant, Nathan Eric Scanlon, was indicted on May 18, 2004, in a four-count indictment charging him with (1) advertisement of child pornography in violation of 18 U.S.C. § 2251(d)(1)(A) (which carried a mandatory minimum sentence of 15 years' imprisonment), (2) receipt and distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2)(B) (which carried a mandatory minimum sentence of five years' imprisonment), (3) possession of child pornography in violation of 18 U.S.C. § 2252(a)(5)(B) (which did not carry a mandatory minimum sentence upon conviction), and (4) forfeiture pursuant to 18 U.S.C. § 2252. The Government's response sets forth facts from which these charges arose to which the parties stipulated in a plea agreement. (See Docket No. 63 at 2 - 7). The court incorporates those facts herein.

Movant initially retained defense counsel, Ms. Lari Trogani, but allegedly became dissatisfied with such representation, asked her to withdraw, and sought appointed counsel. On July 23, 2004, Assistant Federal Public Defender Scott Varholak was appointed to represent Movant.

The undercover investigation purportedly began on September 27, 2002, and a search warrant was executed on Movant's residence on February 20, 2004. Movant, through Mr. Varholak, filed a motion to suppress evidence that was obtained during the execution of that search warrant. Judge Blackburn conducted an evidentiary hearing on

3

the motion on November 4, 2004, at the conclusion of which the motion was denied.

Movant entered his guilty plea to count two of the indictment (receipt and distribution of child pornography) and confessed count four (forfeiture) pursuant to a plea agreement on February 18, 2005. He was sentenced on May 27, 2005, by Judge Blackburn to a term of imprisonment of 121 months and three years of supervised release. Counts one and three of the indictment were dismissed. Judgment was entered on June 13, 2005. Movant did not file an appeal, and as Movant notes in his motion, his right to appeal the conviction was waived as part of the plea agreement. He did file the instant § 2255 motion on April 28, 2006, in which he asserts he received ineffective assistance of counsel from Mr. Varholak in violation of the Sixth Amendment as detailed below. He requests that his "sentence and plea be reversed so that [he] may undergo [his] legal proceedings with the representation that The Constitution of the United States requires." (Docket No. 53 at 8).

More specifically, Movant first asserts that regarding his guilty plea, Mr. Varholak "coerced" him into entering a guilty plea by failing to investigate any defense, which "forced" Movant "to make a decision regarding [his] option of plea vs. trial without adequate information to do so." (Docket No. 53 at 5). In addition, Movant claims Mr. Varholak gave him "threatening misinformation about the outcome of a trial and prison sentence." Second, Movant asserts he was denied his right to appeal, claiming that following both his motions hearing and his sentencing hearing, he asked Mr. Varholak to appeal the court's decision, but Mr. Varholak failed to file these appeals. Movant claims there was no tactical reason for not appealing these decisions, and he vocally disagreed with this course of action on

both occasions. Third, Movant claims that Mr. Varholak did not fully familiarize himself with his case by not reviewing the transcripts of hearings at which he was not present, chose to use "particularly weak arguments instead of readily available, stronger ones," failed in two instances to object to "blatent [sic] misconduct by the government," and failed to call any of the witnesses whom he stated he would call to testify at two different hearings. Movant describes the above claims in some greater detail in his Declaration that was submitted with his motion.

In order to establish ineffective assistance of counsel, Movant "must show that counsel's representation fell below an objective standard of reasonableness. . . . To establish prejudice, he must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Williams v. Taylor, 529 U.S. 362, 390-91 (2000). The court, however, gives considerable deference to an attorney's strategic decisions and "recognize[s] that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland v. Washington, 466 U.S. 668, 690 (1984). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. This court finds that Movant has not established a basis for relief under the Sixth Amendment. Each of Movant's claims of ineffective assistance of counsel will be addressed below.

5

Movant first complains that after Mr. Varholak's appointment, Movant repeatedly asked Mr. Varholak to review the transcripts of the arraignment and bond hearings, but Mr. Varholak refused to request and review the transcripts. Movant told Mr. Varholak and now claims that testimony from those hearings could aid in his defense since they were not heard by Judge Blackburn. Movant, however, has not shown how he was prejudiced by his attorney not reviewing the transcript of these initial proceedings or exactly what information that was allegedly unknown to his attorney as a result of not reviewing the transcripts would have aided the defense. It appears Movant might be referring to testimony by a Secret Service Agent that the investigation began before Movant turned 18, the investigation continued past Movant's eighteenth birthday, and the indictment was returned after Movant turned 18. Mr. Varholak's states in his affidavit, however, that he researched the legal significance, if any, of these facts and whether the Government's delay in indicting Movant until after his birthday was a valid ground for dismissal. Mr. Varholak, however, concluded that it was not a valid ground for dismissal because, as he advised the Movant, the Movant's conduct continued after he reached the age of 18. This court finds that Mr. Varholak's representation did not fall below an objective standard of reasonableness, and Movant has not shown any prejudice.

Regarding the suppression motion, Movant claims that Mr. Varholak was ineffective because he (1) did not argue that the search warrant did not name the person to be searched, (2) did not interview or subpoena Movant's mother and step-father as witnesses to testify regarding the events of the search to further show the Government's misconduct, and (3) did not appeal Judge Blackburn's adverse ruling

6

concerning this motion. The omission of the name of the person to be searched, however, was immaterial. As explained by Mr. Varholak, no persons were searched during the execution of the warrant, so he did not move to suppress based on the warrant's failure to describe the person to be searched. Furthermore, while Movant does not describe the testimony that would have been provided by his mother and step-father, Mr. Varholak explains that although he discussed with Movant the possibility of calling Movant's parents to prove that a copy of the search warrant was not left at the premises, their testimony became unnecessary when an agent who was present at the warrant's execution testified at the suppression hearing that a copy of the warrant had not been left at the premises. (Varholak Aff. ¶¶ 6, 11B). In addition, Mr. Varholak did not appeal Judge Blackburn's adverse ruling on the suppression motion because when Movant pled guilty to count two, he waived all nonjurisdictional defenses to the charge, which would include the Fourth Amendment claims he now asserts should have been raised on appeal. Based upon these circumstances, this court finds that Mr. Varholak's representation did not fall below an objective standard of reasonableness. In addition, Movant has not shown any prejudice.

With regard to the plea discussions, Movant claims the following. Mr. Varholak did not investigate any lines of defense to be used for trial. He informed Movant that the deal presented was "the best I was going to get." Movant was given only roughly one week to decide, and Mr. Varholak told him that he needed to let him know as soon as possible because if he did not want to take the deal, he would need time to begin researching a defense. According to Movant:

> His advice was that taking the plea deal was going to be best because if I didn't, I would undoubtedly face at least the 15 year minimum that the indictment carries. By presenting me the plea in this manner, Mr. Varholak denied me the right to make an **informed decision**. It was his duty to present both, trial options and possible plea deals at the same time. He chose to present only the plea deal and not so much as look into any possible defenses before advising me to take it.

(Docket No. 53 at 13, ¶ 16).

As pointed out by the Government, however, Mr. Varholak's preparation and litigation of the suppression motion required substantial investigation. In addition, according to Mr. Varholak's affidavit, he spoke with Movant numerous times about the charges and his actions (and Movant always admitted committing the actions alleged in the indictment), interviewed Movant's mother and stepfather, arranged to have a Federal Public Defender's Office staff member question an FBI agent about the search warrant's execution, thoroughly reviewed all of the discovery provided, including a mirror image of the computer seized in order to confirm that the Government's analysis of the computer was accurate, and conducted legal research to determine whether there were legal defenses to the charges, including concerning the Government's delay in filing charges until after Movant turned eighteen years of age. Furthermore, as noted by the Government in its response, Movant does not now identify any meritorious defense that was overlooked by Mr. Varholak. In the context of a plea, in order to satisfy the prejudice requirement of the Strickland test, Movant must demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Movant has not made such a showing here.

Furthermore, Movant has not shown that having just roughly one week to

8

decide whether to accept the plea agreement was unreasonable. Moreover, the Government has shown that Movant had significantly more time than "roughly a week" to consider the plea offer. Mr. Varholak states in his affidavit that although Movant signed the plea agreement on February 11, 2005, the plea offer was given to the Movant soon after it was received in November 2004, following the suppression hearing, and the notice of disposition was filed with the court on December 17, 2004. (Varholak Aff. ¶ 12C). Furthermore, nearly two months before the November 5, 2004, suppression hearing, the Government made a "nearly identical offer" which Mr. Varholak discussed with the Movant.

Movant also claims Mr. Varholak gave him "threatening misinformation about the outcome of a trial and prison sentence" and that Mr. Varholak coerced him into accepting the plea in the following manner:

> At sentencing, Mr. Varholak presented his view of what prison life would be like for me. . . . [H]e speaks about me undoubtedly being victimized in prison, having to be segregated and thereby denied human contact, and living in constant fear of assault. This description of prison life, being presented to me by someone I believed to be reputable and knowledgeable in such matters, was the only conception I had of the reality of incarceration. . . .
>
> The prospect of these circumstances terrified me to the point that I was wiling to take any available option in order to reduce the amount of time I would have to endure these conditions. I did not believe I would survive even the ten year sentence I was given, much less a fifteen year or longer one. From the information Mr. Varholak had given me, a trial would mean fifteen years or longer, and the plea would mean ten - possibly as little as five. It was Mr. Varholak's duty to keep me informed and to assist me in making an informed decision concerning a field in which I had no experience. Knowing my likely prison designation, it is wholly unreasonable for him to have terrorized me with his statements as he did.

(Docket No. 53 at 13-14, ¶¶ 17-18). Initially the court notes that an argument made

by Mr. Varholak at the sentencing hearing could not have possibly motivated Movant to enter his guilty plea months earlier.  Furthermore, as noted by the Government, Movant does not identify what information provided by Mr. Varholak was "misinformation" or was communicated in a threatening manner.  This court agrees with the Government that an attorney's professional evaluation of the chances for a favorable outcome and the likelihood of negotiating a more favorable plea agreement than the one offered is a usual duty of defense counsel and is neither a threat nor presumptively incorrect.  It was factually correct that a conviction on Count One would result in a mandatory minimum of 15 years of imprisonment, and counsel was obliged to provide such essential information to the Movant.  This court finds that Mr. Varholak's communication of that information and his professional assessment that conviction on Count One was likely, especially in view of Movant's admissions, did not fall below an objective standard of reasonableness.  In addition, Movant has not demonstrated that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Movant also contends that Mr. Varholak chose to use a "particularly feeble argument" at sentencing, namely, Movant's physical appearance, and based his entire request for downward departure upon it.  (Docket No. 53 at 14, ¶ 19).  Movant claims that prior to the sentencing hearing, it was discussed that Mr. Varholak would use multiple other factors to argue for downward departure, including Movant's clear criminal history, the fact that he was under age 18 for most of the commission, and his continuing contributions to work, community, and family.  Instead, Mr. Varholak

10

allegedly used almost exclusively "an argument which could scarcely be considered by the court and was certainly not likely to be successful." (Docket No. 53 at 14, ¶ 20). The Government, however, has shown that the Probation Office, the prosecutor, and the court did not regard the downward departure argument lightly or as one that they were "scarcely able to consider." To the contrary, the Government and Mr. Varholak state that the Probation Office recommended that the downward departure sought by Movant's counsel be granted, the prosecutor filed a written response to the request and argued against it at considerable length (Docket No. 52 at 17-29), and the court specifically addressed the request (Docket No. 52 at 32-37). Furthermore, the Government and Mr. Varholak advise that the factors Movant alleges were not argued at sentencing were brought to the court's attention in the Presentence Investigation Report, Mr. Varholak's objections and written response thereto, and various letters that were attached to that Report. Also, the court notes that the sentencing transcript shows that Mr. Varholak did reference in his argument that Movant had no prior record (Docket No. 52 at 13:9) and was only 17 years old and immature and naive when the government first became aware of the offense (Docket No. 52 at 14:19-20). The transcript also reflects that in considering and fashioning a sentence, Judge Blackburn considered, *inter alia*, "the history and characteristics of this admittedly youthful offender;" "the presentence report and its concomitant addendum in toto;" "the reasons stated, arguments advanced, and authorities cited by the parties in their papers and during this oral argument and presentation;" and the plea agreement. (Docket No. 52 at 29-30). Movant has made no showing that a particular factor was not brought to the court's attention and

11

that it was of such significance that the court's sentence would have been different had it been emphasized more by counsel. This court finds that Mr. Varholak's representation did not fall below an objective standard of reasonableness, and Movant has not shown any prejudice.

Movant also complains that Mr. Varholak did not call Movant's parents or friends to testify on his behalf at the sentencing hearing. Mr. Varholak, however, explains in his Affidavit that in his professional judgment, it was unnecessary to call them because their testimony would have been essentially a reiteration of information already included in the Presentence Investigation Report and the attachments thereto and considered it unwise to subject them to cross-examination. (Varholak Aff. At ¶ 13A). Once again, this court finds that Mr. Varholak's representation did not fall below an objective standard of reasonableness, and Movant has not shown any prejudice.

Also, Movant claims that Mr. Varholak failed to object to the prosecution's mention of dismissed count one of the indictment as a reason to maintain his recommended 121-month sentence. Movant characterizes the prosecutor's statement as highly-damaging and inadmissible at sentencing. The Government correctly asserts, however, that it is proper for a prosecutor to refer at sentencing to a defendant's admitted conduct, including conduct beyond the particular offense of conviction as relevant offense conduct. See U.S.S.G., § 1B1.4 & Commentary ackground ("In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and

12

conduct of the defendant, unless otherwise prohibited by law. See 18 U.S.C. § 3661." . . . "For example, if the defendant committed two robberies, but as part of a plea negotiation entered a guilty plea to only one, the robbery that was not taken into account by the guidelines would provide a reason for sentencing at the top of the guideline range and may provide a reason for an upward departure."). This court finds that by not objecting to this argument/comment, Mr. Varholak's representation did not fall below an objective standard of reasonableness, and Movant has not shown any prejudice.

In addition, Movant complains that Mr. Varholak failed to appeal Movant's sentence as requested, telling Movant he had no grounds for an appeal. Movant, however, has not suggested any possible grounds upon which his sentence could have or should have been appealed, and the court agrees with the Government that no such meritorious grounds are apparent. In fact, as noted by the Government, a sentence imposed within the advisory guideline range is presumptively reasonable. See United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006). Movant here has not rebutted this presumption.

Movant also alleges that because there was prosecutorial misconduct and sentencing manipulation because the government had ample evidence for an indictment at the start of the investigation, at which time he was under the age of 18. He complains that Mr. Varholak would not raise or investigate the issue. This court finds, however, that Mr. Varholak's representation did not fall below an objective standard of reasonableness. As noted by Mr. Varholak in his Affidavit, he researched whether such a delay would provide grounds for a motion to dismiss the

indictment, but the research indicated that because Movant continued his conduct beyond the age of eighteen, this would not be a valid grounds for a motion to dismiss. (Docket No. 63-2 at ¶ 10).

Finally, Movant complains that Mr. Varholak failed to object to specific sentencing enhancements which were not in his formal indictment. Mr. Varholak allegedly should have been fully aware of the Booker[1] Supreme Court decision and should not have allowed the highly-damaging enhancements to remain in the plea and inflate Movant's sentence to more than double the recommended range without the enhancements. As Mr. Varholak explains, however, "[b]ecause [Movant] pled guilty after the *Booker* decision rendered the guidelines advisory, I did not believe that the enhancements needed to be included in the indictment. The Tenth Circuit has subsequently confirmed my analysis in the context of other cases." (Docket No. 63-2 at 4, ¶ 13(C)). Furthermore, the Government correctly asserts that there was no basis under Booker for defense counsel to object to the court's application of guideline enhancements, and Movant can demonstrate no prejudice due to the lack of such an objection by his counsel. As explained by the Government, "after *Booker*, although the sentencing court is required to consider the guidelines, including enhancements set forth therein, the guidelines are advisory in nature and the court has discretion to impose a sentence outside the applicable guideline range based on the factors specified by Congress in 18 U.S.C. § 3553(a). Enhancements under the guidelines need be supported by only a preponderance of the evidence. *See, e.g.,*

---

[1] United States v. Booker, 534 U.S. 220 (2005).

14

*United States v. Magallanez*, 408 F.3d 672, 685 (10th Cir.), *cert. denied*, . . . 126 S. Ct. 468 (2005)." In addition, the Government correctly notes that here, all of the facts upon which the sentence under the guidelines was based were admitted by the Movant in his plea agreement and at his change of plea hearing.

In sum, this court finds that none of Movant's claims demonstrate he is entitled to habeas relief, and no evidentiary hearing is required because the record demonstrates he is not entitled to relief. See United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988) (holding that an evidentiary hearing is not required on a § 2255 motion when the court finds that the case record conclusively shows that the movant is not entitled to relief). Movant has not shown that Mr. Varholak's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for Mr. Varholak's unprofessional errors, the result of the proceeding would have been different. Movant has not overcome the presumption that Mr. Varholak rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. at 694. Therefore, the Sixth Amendment claim fails.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (Docket No. 53) be **denied**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge**

15

**assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: September 21, 2009     s/ Michael J. Watanabe  
        Denver, Colorado                    Michael J. Watanabe  
                                              United States Magistrate Judge